UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

**CASE NO.:**

JANE DOE 1 & JANE DOE 2,

Plaintiffs,

vs.

MATTHEW LOUIS GAETZ II, JOEL MICAH GREENBERG, CHRISTOPHER DORWORTH, GREENBERG DENTAL ASSOCIATES, LLC, GREENBERG DENTAL & ORTHODONTICS, P.A., GREENBERG DENTAL SPECIALTY GROUP, LLC, and AWG, INC.,

Defendants.
______________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, JANE DOE 1 and JANE DOE 2, by and through their undersigned attorneys, sue Defendants MATTHEW LOUIS GAETZ II ("GAETZ"), JOEL MICAH GREENBERG ("GREENBERG"), and CHRISTOPHER DORWORTH ("DORWORTH"), GREENBERG DENTAL ASSOCIATES, LLC, GREENBERG DENTAL & ORTHODONTICS, P.A., GREENBERG DENTAL SPECIALTY GROUP, LLC (collectively, "GREENBERG DENTAL"), and AWG, INC. ("AWG"), and allege as follows:

**INTRODUCTION**

"O brave new world that has such people in it." – Aldous Huxley

They were men of power, wealth, and privilege who used their positions not to protect the vulnerable but to prey upon them. This action arises from the recruitment and sexual exploitation

of Jane Doe 1 and Jane Doe 2 during 2017 through January 2019. GAETZ and GREENBERG coordinated the recruitment, payments, drugs, and travel to obtain commercial sexual acts from young women. DORWORTH knowingly participated in these events and GREENBERG DENTAL and AWG supplied the money that funded these illicit acts. Plaintiffs seek relief for their injuries caused by these events under 18 U.S.C. § 1595, et.seq. (The Trafficking Victims Protection Reauthorization Act “TVPRA”). The Defendants collectively used their public office, power, and wealth to prey on the economic vulnerability of Plaintiffs to commit the acts outlined below.

**BACKGROUND**

1. At the time of this venture, GAETZ was a sitting member of Congress, holding himself out to be one of President Donald J. Trump’s closest confidants and most loyal supporters.

2. GAETZ was fifteen years older than Jane Doe 1 and thirteen years older than Jane Doe 2. Defendants relied upon this significant age difference between themselves and the Jane Does, who were recent high school graduates, to ensure their silence.

3. Of those prosecuted in connection with this venture, one participant, Greenberg, has already been convicted of federal offenses in relation to his involvement in the trafficking of young women and girls.

4. In May 2021 GREENBERG pled guilty to six federal counts, including sex trafficking of a minor, and in December 2022 he was sentenced to eleven years in federal prison. GREENBERG’S guilty plea was entered under a written Plea Agreement filed on May 14, 2021, in United States v. Joel Micah Greenberg, Case No. 6:20-cr-97-GAP-LRH (M.D. Fla.), Doc. 105 (the "Plea Agreement"). GREENBERG pled guilty to Count One, sex trafficking of a child in violation of 18 U.S.C. § 1591, together with production of a false identification document, aggravated identity theft, wire fraud, stalking, and conspiracy to

commit an offense against the United States. (Plea Agreement at 1–2.) GREENBERG certified that he was pleading guilty "because defendant is in fact guilty" and admitted that the facts in the Plea Agreement's Factual Basis are true and that the United States could prove them beyond a reasonable doubt. (Id. at 23.) Greenberg also agreed to cooperate fully with the United States in the investigation and prosecution of other persons and to testify truthfully in federal proceedings. (Id. at 9–10.)

5. GREENBERG recruited economically vulnerable young women through SeekingArrangement.com, introduced them to GAETZ, and supplied the drugs he paid the women extra to take, including a minor, "Victim A," with whom GREENBERG admitted engaging in commercial sex acts at least seven times. In the Plea Agreement, GREENBERG admitted that he was involved in "sugar daddy" relationships in which he paid women for sex but "attempted to disguise the payments as 'school-related' expenses or other living expenses." He further admitted that he used his account on a "sugar daddy" website to identify women whom he later paid to engage in commercial sex acts "with him and others." (Plea Agreement at 28.)

6. GREENBERG admitted that during these commercial sex acts he "often would offer and supply" Victim A "and others[1]" with Ecstasy, and that "[o]ftentimes" he would offer to pay Victim A and others an additional amount of money to take Ecstasy. (Plea Agreement at 30.) Greenberg also admitted that he introduced Victim A to other adult men, who engaged in commercial sex acts with her in the Middle District of Florida, some of them in GREENBERG's presence, while she was under the age of eighteen. (Id. at 30–32.)

[1] Jane Does 1 and 2 are two of those "others."

7. GREENBERG admitted that he used his access as Tax Collector to the Florida Driver and Vehicle Information Database ("DAVID") to "look up and investigate his sexual partners," through searches that were unauthorized and violated the federal Driver's Privacy Protection Act. On or about September 4, 2017, he ran a DAVID search on Victim A "because he had reason to believe" that she was under the age of eighteen. GREENBERG admitted that he acted in reckless disregard of the fact that Victim A was a minor. (Plea Agreement at 31–32.)

8. Jane Does 1 & 2 were some of the women GREENBERG found through the site identified in paragraph 5 above and first contacted Jane Doe 2 in October 2017 through that site, and months later he promised her $1,000 for a meeting at a hotel. He used the meeting to have her deliver an MDMA pill to another man, and never paid the balance.

9. The House Ethics Committee conducted an investigation[2] and issued a final report of its own regarding this matter (hereinafter “Committee report”).

10. According to the Committee's report, GAETZ maintained no account of his own on SeekingArrangement.com, however GREENBERG indicated he frequently showed it to GAETZ and provided him his login credentials, and GREENBERG told the Committee that he and GAETZ "would split the costs of 'drugs, hotel [s], and girls.”

11. GAETZ paid his share by phone, sending Jane Doe 1: $6,198.75 captioned "Being my friend" and "1x flight + xtra 4 u," and Jane Doe 2: $4,025.27 captioned "Car deductible" and "Love you," some of it through a pseudonymous email account the Committee Report stated appears to have set up from his House office in the Capitol complex.

---

[2] The United States Department of Justice also instituted a multi-year investigation into GAETZ for sex trafficking, illegal drug use and potential obstruction of justice, but concluded its investigation in 2023.

12. GAETZ supplied the drugs as readily as the money, asking women by text to bring "rolls," and GREENBERG told the Committee that he provided ecstasy while GAETZ reimbursed him in cash.

13. DORWORTH's residence was in Heathrow, a gated community in Seminole County. Entry to this community required a driver's license and a call to the house from a staffed gate that logged every arrival.

14. On July 15, 2017, Jane Doe 1 attended a party at DORWORTH's home. GAETZ had sex with her in an upstairs guest bedroom. Controlled substances circulated at the party, and Jane Doe 1 took MDMA during the evening.

15. Afterward, Jane Doe 1 saw GAETZ having sex with "Victim A," then seventeen, downstairs near the game table. The Committee found substantial evidence that the then seventeen-year-old received $400 in cash from GAETZ that evening and understood it to be payment for sex.

16. The alleged undertaking also involved interstate and international travel.

17. Defendants arranged and funded travel for Plaintiffs, other victims, and other prominent political figures to Venice Beach, Miami, Las Vegas, the Florida Keys, the Bahamas, and New York City between December 2017 and January 2019.

18. These trips took Jane Doe 1 and Jane Doe 2 to places they had never been and into rooms with men they would never otherwise have met, and every part of that access, from the flights to the hotel rooms, was paid for by men, including the Defendants, who expected sex in return.

19. Between December 2016 and December 2018, the former Seminole County Tax Collector ran more than 150 transactions totaling over $70,000 to pay women for commercial sex

acts, some of the sum charged to the Tax Collector's Office American Express card and often given not-so-clever captions such as "school" or "ice cream".

20. GREENBERG admitted that he made these payments through at least four accounts: his personal Venmo account, his personal American Express account, his American Express account at the Tax Collector's Office, and his personal Fifth Third Bank account. His Venmo payments for commercial sex acts "were often between $200 to $1,000," and he "often falsely represented" that they were for school-related or other living expenses, using messages such as "school," "food," and "ice cream." (Plea Agreement at 29.) GREENBERG also used his personal and Tax Collector's Office credit cards to pay for hotel rooms in the Middle District of Florida where he engaged in commercial sex acts with Victim A, including Embassy Suites charges on or about June 7, June 24, and June 25, 2017. (Id. at 31.) These are the same disguised-payment labels, including "School," that GREENBERG later used for his payments to Jane Doe 2.

21. GREENBERG’s 2017 financial disclosure to the Florida Commission on Ethics make clear that the sex venture in question was paid for in part by GREENBERG’s family enterprise. In 2017, he reported $149,253 from the Tax Collector's Office and $400,000 in salary from AWG, Inc., for what was classified as "strategic advice," and his corrected filing reported that 100% of his income, valuables, and wealth came from AWG.

22. GREENBERG's father, Andrew W. Greenberg, is the principal of AWG, Inc. and serves as President of both Greenberg Dental Associates, LLC and Greenberg Dental & Orthodontics, P.A., which together with Greenberg Dental Specialty Group, LLC are referred to here as "Greenberg Dental." As AWG's principal, Andrew W. Greenberg controlled the disbursements AWG made to his son.

23. GREENBERG's family repeatedly supplied money to cover his misconduct during the same period as the venture. GREENBERG admitted that in December 2017 he diverted $100,000 in Tax Collector's Office funds to buy cryptocurrency for himself and that, to make it look as though the money had been returned, "a family member wrote him a check for $90,000 with a notation of 'loan,'" which he deposited on or about January 17, 2018. (Plea Agreement at 42–46.) After GREENBERG diverted another $200,000 in Tax Collector's Office funds in December 2018, a family member again provided a $200,000 check, which was used to obtain a $200,000 cashier's check from the Longwood, Florida branch of Seacoast Bank, "where GREENBERG and the family member shared an account." (*Id.* at 52–54.) Upon information and belief, the family member who provided these funds is Andrew W. Greenberg, and the funds were derived from AWG and Greenberg Dental.

24. GREENBERG received $100,000 a quarter through disbursements from AWG, which, according to DORWORTH, "received its value and income from Greenberg Dental," and GREENBERG held $5,500,000 in AWG stock whose value derived from ownership of Greenberg Dental. DORWORTH has described AWG as a vehicle through which GREENBERG's parents funded his lifestyle and alleged criminal activities.

25. Greenberg Dental funded every part of GREENBERG's conduct that cost money, knowing the nefarious purposes on which it would be spent. Its money paid to recruit Plaintiffs and other economically vulnerable young women for trips with GAETZ to New York and the Bahamas, bought the MDMA, marijuana, and cocaine used to coerce them into commercial sex acts, and moved those drugs across state and national lines. Greenberg Dental generated the money, and AWG paid it out to GREENBERG.

26. These events, the scheme, and the people with whom Joel Greenberg was associating were not unknown to GREENBERG's family and business associates. Rather, this was simply the "cost of doing business".

27. GREENBERG participated in the execution a scheme whereby he and his family benefited not only through Joel Greenberg's own personal amusement through drugs and sex with young, barely adult women.

28. The GREENBERG family and its affiliates, associates, and business ventures benefitted from Joel Greenberg's utilization of the GREENBERG family fortune for the benefit and satisfaction of political power players and brokers throughout the State of Florida and to the very halls of Congress itself.

29. The support did not stop when the venture was exposed. After GREENBERG's arrest on June 23, 2020, he was bailed out with funds from AWG, Greenberg Dental, and Andrew Greenberg.

30. After his June 23, 2020, arrest, GREENBERG learned that investigators were looking into his commercial sex acts with one of the victims. He then contacted one of the victims directly and through one of her friends, to ask her to lie to investigators about why he had searched for her in the DAVID system. He also asked her for help "in making sure that their stories would line up, because he knew that his commercial sex acts with her were illegal." (Plea Agreement at 32.)

31. Even after his arrest, GREENBERG's purpose for obtaining money stayed the same. While on pretrial release, GREENBERG conspired to obtain $432,700 in fraudulent federal Economic Injury Disaster Loan proceeds. He admitted that he had no intention of using the

funds for legitimate business expenses, asking a co-conspirator, "How quickly can I blow it all on pussy?" (Plea Agreement at 3, 77–85.)

32. GREENBERG's prosecution is what exposed the rest of the venture. Federal investigators working his case turned to GAETZ, and the House Committee on Ethics opened its own investigation in April 2021.

33. The Committee found that from at least 2017 to 2020 GAETZ "regularly paid women for engaging in sexual activity with him," documenting more than $90,000 in payments to roughly a dozen women that it concluded were "likely in connection with sexual activity and/or drug use".

34. Plaintiffs refer to particular factual findings and records described in the Committee report as corroboration of the events alleged here. Their claims rest on the conduct alleged in this Complaint and are not premised on the Committee having adjudicated civil trafficking liability.

35. Every part of this venture ran on an exploitative power imbalance. On one side stood a sitting congressman, an elected tax collector, and a former state legislator, men with public office, private homes, and money to spend.

36. On the other stood young financially vulnerable women in their early twenties. The venture assumed that women with so little would never be believed over men with so much.

**JURISDICTION AND VENUE**

37. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Counts I and II seek civil relief under 18 U.S.C. § 1595 for violations of 18 U.S.C. § 1591. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Counts III and IV because they arise from the same recruitment, payments, drug distribution, and commercial sexual

activity.

38. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the alleged events occurred in the Middle District of Florida, including the gatherings in Longwood, Maitland, Heathrow, and Orlando. Defendants' alleged conduct directed at Plaintiffs in Florida supplies the Florida contacts on which Plaintiffs rely for personal jurisdiction; the claims arise from that conduct.

39. At the time of filing, Defendant GAETZ is domiciled in Niceville, Okaloosa County, Florida.

40. Defendant GREENBERG is domiciled in Heathrow, Seminole County, Florida, where he resided before his federal incarceration. He is currently serving an eleven-year federal sentence at the Federal Correctional Institution in Miami, Florida.

41. Defendant DORWORTH resides in Heathrow, Seminole County, Florida.

42. Defendant Greenberg Dental Associates, LLC is a Florida limited liability company with its principal place of business in Altamonte Springs, Seminole County Florida.

43. Defendant Greenberg Dental & Orthodontics, P.A. is a Florida professional association with its principal place of business in Altamonte Springs, Seminole County, Florida.

44. Defendant Greenberg Dental Specialty Group, LLC is a Florida limited liability company with its principal place of business in Altamonte Springs, Seminole County, Florida.

45. Defendant AWG, Inc. is a Florida corporation with its principal place of business in Forest City, Seminole County, Florida.

46. Independent of domicile, each Defendant is subject to personal jurisdiction in Florida because the claims arise from conduct, he directed at Plaintiffs in Florida, as alleged in *infra*.

47. This action is properly brought in the Orlando Division of the Middle District of Florida because the gatherings in Longwood, Maitland, Heathrow and Orlando occurred within that Division.

**The Venture**

48. GREENBERG would seek out financially vulnerable young women and girls on SeekingArrangement.com.

49. GAETZ did not have a SeekingArrangement.com account of his own, but shared GREENBERG's login to the website, so he could assist GREENBERG in the venture's search for financially vulnerable young women.

50. GAETZ and GREENBERG would "split the costs of "drugs, hotel [s], and girls", acting as the funding for the venture.

51. GREENBERG also used his public office to supply the women with false identification. GREENBERG admitted that he stole surrendered driver's licenses from the Seminole County Tax Collector's Office on multiple occasions, and that witnesses who were present when he was with women he paid for commercial sex acts "observed GREENBERG offer some of the women the use of a stolen license from the Tax Collector's Office." (Plea Agreement at 37–38.)

52. GAETZ and GREENBERG allegedly coordinated the following means of recruiting, paying, and maintaining access to the women. DORWORTH's alleged participation is limited to the separately pleaded conduct at his residence and his agreement described below:

a. recruiting women in financial need through SeekingArrangement.com;

b. paying the women for sex through Venmo and PayPal transfers labeled with innocent descriptions such as "Being my friend," "Rent," "School," and "Car deductible," to disguise the purpose of the payments;

c. promising to cover the women's basic needs, including college tuition, rent, and car expenses, and then withholding full payment so the women stayed dependent on the venture for the balance;

d. supplying the women with MDMA, cocaine, and other controlled substances at parties and on trips;

e. flying the women to Miami, Las Vegas, the Bahamas, New York City, and other destinations, with the travel itself treated as payment for sex;

f. telling Jane Doe 1 and Jane Doe 2, through Garcia during the New York trip, that they had to perform sexual acts with GAETZ before going to a nightclub;

g. providing private residences and rented properties, including DORWORTH's home and an Orlando Airbnb, where drugs were distributed and sexual activity was expected;

h. forbidding the women from using phones or taking photographs on trips and at gatherings, to prevent any record of the venture's conduct;

i. having associates "vet" new women before they were allowed to join trips or gatherings, to make sure each woman could be trusted to stay silent; and

j. using the relationships and access described below to maintain the arrangement.

**Jane Doe 1**

53. Jane Doe 1 was born in May 1997. She was twenty years old when she was introduced to the venture in summer 2017 and when she attended the July 15, 2017 gathering at

DORWORTH's residence. She was twenty-one during the September 2018 Bahamas trip and the January 2019 New York trip.

54. Jane Doe 1 and "Victim A" were friends before coming into contact with any of the Defendants or their associates.

55. "Victim A" first came into contact with the venture when GREENBERG reached out to her on SeekingArrangement.com

56. GREENBERG admitted that he met Victim A over the internet on the website, asked her for her Snapchat, and used his own Snapchat account to arrange to meet her. At their first meeting, on his boat, GREENBERG paid Victim A approximately $400. He then invited her to a hotel in the Middle District of Florida, where they engaged in commercial sex acts for which he paid her over $400. After that, GREENBERG and Victim A met at hotels in the Middle District of Florida, "often with others," to engage in commercial sex acts. (Plea Agreement at 29–30.)

57. Jane Doe 1 then was introduced to the venture in the summer of 2017 when "Victim A" introduced her to the venture's recruiter, GREENBERG.

58. In June 2017, GREENBERG brought Jane Doe 1 to a gathering at a hotel in Longwood. There, GREENBERG supplied MDMA to Jane Doe 1. She had never taken the drug before. She was so impaired that she "barely remember [ed] anything until later that evening" and could not drive home.

59. A month later, on July 15, 2017, Jane Doe 1 attended a party at DORWORTH's gated residence at GREENBERG's invitation. She arrived alone at about 8:50 p.m., showed identification at the gate, and waited while guards called the house for approval.

60. Jane Doe 1 had not met either GAETZ or DORWORTH until the July 15th party at DORWORTH's home.

61. Soon after Jane Doe 1 arrived, GAETZ introduced himself and gave her a tour of the upstairs of the DORWORTH home.

62. The tour ended with GAETZ having sex with Jane Doe 1 in a guest bedroom.

63. Over the course of the evening, controlled substances circulated freely. Jane Doe 1 took a quarter pill of molly. DORWORTH showed guests how to use a Volcano vaporizer, and GAETZ used cocaine.

64. Later that evening, Jane Doe 1 saw GAETZ having sex with "Victim A" near the downstairs game table.

65. On July 15, 2017, "Victim A" was only 17 years old. GAETZ gave "Victim A" $400 in cash that night, which "Victim A" understood to be payment for sex.

66. GREENBERG admitted that he and Victim A called or texted each other on or about July 14 and July 15, 2017, among other dates, and that many of those communications were for the purpose of scheduling times to meet to engage in commercial sex acts. (Plea Agreement at 30–31.) July 15, 2017 is the date of the gathering at DORWORTH's residence.

67. When the venture recruited Jane Doe 1, she had no meaningful savings and no stable income.

68. The venture used that need. They led her to believe they could solve her financial problems as long as she kept performing sexual acts for them and their associates.

69. On July 18, 2017, three days after the party, GAETZ sent Jane Doe 1 $500 by PayPal. It was the first of thirteen payments he would make to her.

70. The money never came as a single payment that would have solved Jane Doe 1's financial issues. Between July 2017 and January 2019, GAETZ and GREENBERG paid Jane Doe 1 on at least nineteen documented occasions. The payments ranged from $150 to $1,000.

71. The payments covered expenses only once and never removed the underlying need. GREENBERG paid her $824 for "Rent" on December 11, 2017. Less than three months later, on March 8, 2018, he paid her $350 for "Rent" again.

72. GAETZ's payments followed the same pattern: small sums with vague labels such as "Being my friend," "Being awesome," "Here," and "Just because".

73. Some promised money never arrived at all. A text dated July 16, 2017 references a $500 payment to Jane Doe 1 that was never made. GREENBERG also failed to pay her what he had promised on other occasions.

74. When she asked GAETZ why she hadn't been paid, he listed what he had already given her and the other women, and only then sent more.

75. In place of cash, the venture also paid with travel. It flew Jane Doe 1 to Venice Beach, Las Vegas, the Florida Keys, the Bahamas, and New York City in exchange for sexual activity.

76. Jane Doe 1 alleges that the irregular payments and unpaid promises contributed to her continuing financial dependence on GAETZ and GREENBERG. The specific conduct alleged to have caused her to perform commercial sexual acts through fraud or coercion is identified below.

**Jane Doe 2**

77. Jane Doe 2 was born in January 1995. She was twenty-two years old when GREENBERG first contacted her on October 20, 2017, and when she first met him at the Sheraton hotel

in Maitland on November 5, 2017. She was twenty-three when GREENBERG procured her on March 18, 2018, and during the January 2019 New York trip.

78. When the venture recruited Jane Doe 2, she had no meaningful savings or stable income.

79. On October 20, 2017 GREENBERG first reached out to Jane Doe 2 on SeekingArrangement.com.

80. On November 5, 2017, Jane Doe 2 first met GREENBERG in person when he paid her to meet him at a Sheraton hotel in Maitland for sex.

81. GREENBERG then reached out to Jane Doe 2 again inviting her to a party at a property the venture had rented on December 8, 2017. GREENBERG promised Jane Doe 2 that she would be "well compensated" for attending but gave her little details about what would be required from her.

82. Jane Doe 2 arrived at the party first and alone. As the evening went on, about ten people arrived, more of them women than men. GAETZ arrived later than the other guests, and Jane Doe 2 met him for the first time that night. Pressed MDMA pills were handed out, and Jane Doe 2 took one with GREENBERG. GREENBERG then had sex with Jane Doe 2, and GAETZ had sex with her afterward.

83. Two days after the party, on December 10, 2017, the venture flew Jane Doe 2 to Venice Beach with Jason Pirozzolo and Savara Hastings. That same day, GREENBERG sent her $500 labeled "School".

84. On December 29, 2017, the venture flew Jane Doe 2 to Miami for New Year's, again with Pirozzolo and Hastings.

85. On March 18, 2018, GREENBERG offered Jane Doe 2 $1,000 to meet him again at the Sheraton hotel in Maitland for sex. During that meeting, GREENBERG told Jane Doe 2 to

meet an unidentified man and "give him a bean," meaning give him a pressed MDMA pill. GREENBERG never paid Jane Doe 2 the full $1,000 he had promised.

86. Around May 3, 2018, GREENBERG told Jane Doe 2 he would pay for her college courses.

87. On May 8, 2018, Jane Doe 2 texted GREENBERG that her classes still had not been paid in full and asked whether he would cover the rest. GREENBERG answered that he would pay soon and was waiting for GAETZ to send the rest of the money.

88. GREENBERG sent Jane Doe 2 $300 labeled "School" that day and another $250 labeled "School" two days later. The money never covered the full cost of her classes.

89. GAETZ joked that the money he paid Jane Doe 2 for sex should go toward her tuition and not to "Delta airlines." GREENBERG offered her Adderall so she could stay awake for class after seeing him.

90. GREENBERG made six payments to Jane Doe 2, three labeled “School.” Jane Doe 2 alleges that the incomplete tuition payments and repeated promises contributed to her financial dependence. The specific conduct alleged to have caused her to perform commercial sexual acts through fraud or coercion is identified below.

91. GREENBERG has admitted under oath that "school" was one of the labels he used to disguise payments for commercial sex acts as school-related or living expenses. (Plea Agreement at 28–29.) His "School" payments to Jane Doe 2 follow that admitted practice.

**The Trips**

92. On May 19, 2018, Jane Doe 1 and Jane Doe 2 traveled to Miami for an event with GAETZ. The two women shared a hotel room with GAETZ.

93. On their way to Miami, Jane Doe 1 and Jane Doe 2 were in a car accident. Three days later, on May 22, 2018, GAETZ sent Jane Doe 2 $300 labeled "Car deductible".

94. On May 27, 2018, the venture flew Jane Doe 1 and Jane Doe 2 to Las Vegas with Pirozzolo, Hastings, and Daniel Cook. The group stayed at The Venetian.

95. From June 21 to June 23, 2018, the venture flew Jane Doe 2 to the Florida Keys with Pirozzolo and Hastings.

96. On September 13, 2018, the venture took Jane Doe 1, Jane Doe 2, and other women to the Bahamas on private planes. Before the trip, Halsey Beshears collected the women's passports. Jane Doe 2 flew on Beshears's plane. Jane Doe 1 flew on Pirozzolo's plane.

97. GAETZ gave Jane Doe 2 money to buy drugs for the group. There were no separate cash payments on the trip. The trip itself was the payment for sex with Jane Doe 1 and Jane Doe 2.

98. In January 2019, GAETZ paid for Jane Doe 1 and Jane Doe 2 to fly to New York City to meet him and Garcia. Garcia told the women that they first had to "service" GAETZ before going to a nightclub.

99. During the New York trip, GAETZ sent Jane Doe 2 $250 labeled "Hi" and $420 labeled "Joy!"

100. The New York trip was the last contact either woman had with the venture. On February 1, 2019, Jane Doe 1 and Jane Doe 2 moved to Colorado together.

**The Defendants Acted Together to Run the Venture**

101. The alleged undertaking divided responsibilities among its participants as follows:

a. GREENBERG found and recruited the young financially vulnerable women and girls;

b. GAETZ shared recruitment access with GREENBERG and paid women, travel expenses, and drug costs;

c. DORWORTH provided his Heathrow residence for the July 15, 2017 gathering and participated in the activities alleged there.

102. Plaintiffs allege a coordinated undertaking based on the shared recruitment access, allocation of costs, repeated arrangements for sexual activity, and provision of a gathering place described above. The scope of each Defendant's alleged agreement and knowledge is specified below.

103. GAETZ and GREENBERG knowingly received sexual access through the undertaking. Their joint arrangements distributed the expenses of recruitment, lodging, drugs, and travel between them.

104. GAETZ benefited by obtaining sexual gratification from the young women the venture recruited, paid, and controlled.

105. GREENBERG benefited by obtaining sexual gratification from the young women he recruited and paid for the venture.

106. DORWORTH's benefit was sexual access to the young women the venture brought to his home.

## ADDITIONAL FACTS CONCERNING THE EXPLOITATION

107. Defendants trafficked Jane Doe 1 through the following encounters and conduct:

a. **Recruitment, enticement and obtaining**. GREENBERG recruited Jane Doe 1 through an online "sugar" website, brought her into the venture, and enticed her to private gatherings where GAETZ and others obtained her for sex. GAETZ and GREENBERG then repeatedly recruited, enticed, transported, provided and obtained Jane Doe 1 for sex at hotels, private residences, rental properties and on trips they arranged and funded.

b. **Commercial sex acts**. GAETZ repeatedly engaged in sexual intercourse with Jane Doe 1. He and GREENBERG gave her things of value in exchange: electronic payments, paid travel, lodging and other benefits. Each act was a commercial sex act within the meaning of 18 U.S.C. § 1591(e)(3).

c. **Coercion and fraud**. Defendants selected Jane Doe 1 because she was young and financially vulnerable, with no savings and no stable income. They exploited that vulnerability through a deliberate scheme of economic control. They led her to believe they would resolve her financial needs as long as she continued to perform sexual acts for them and their associates. They then made the payments small, irregular and incomplete, so each payment relieved a need only briefly and never removed it. They promised money they did not pay and withheld payment until she asked. They used the age, wealth and political power gap between themselves and Jane Doe 1 to keep her compliant and silent. Through this pattern, Defendants caused Jane Doe 1 to believe she would suffer serious financial harm if she stopped performing sexual acts. That belief was reasonable for a young woman in her circumstances, and Defendants intended it.

d. **Knowledge or reckless disregard**. GAETZ and GREENBERG knew, or recklessly disregarded, that their scheme would cause Jane Doe 1 to engage in commercial sex acts. They coordinated recruitment, shared access to the recruitment site, and split the costs of "drugs, hotel [s], and girls." GREENBERG has admitted that he identified women on the website whom he later paid to engage in commercial sex acts "with him and others," that he disguised those payments as school or living expenses, and that he offered women extra money to take Ecstasy during commercial sex acts. (Plea

Agreement at 28–30.)

e. **Interstate commerce**. Defendants' conduct was in and affecting interstate commerce. They recruited through the internet, paid Jane Doe 1 through interstate electronic payment platforms, and arranged and funded her interstate and international travel. GREENBERG has admitted that Venmo, Snapchat, cellular telephones, and American Express transactions processed by servers outside Florida are facilities and instrumentalities of, or affect, interstate commerce. (Plea Agreement at 29–31.)

f. **Injury**. As a direct and proximate result, Jane Doe 1 suffered damages, as alleged in paragraph 83.

108. Defendants trafficked Jane Doe 2 through the following encounters and conduct:

a. **Recruitment, enticement and obtaining**. GREENBERG targeted Jane Doe 2 through an online "sugar" website and recruited her by promising she would be "well compensated." He withheld any meaningful description of what would be expected of her. GREENBERG brought her into the venture's private gatherings, where GAETZ and GREENBERG obtained her for sex. They then repeatedly recruited, enticed, transported, provided and obtained her for sex at hotels, rented properties and on trips they arranged and funded.

b. **Commercial sex acts**. GREENBERG and GAETZ each engaged in sexual intercourse with Jane Doe 2. They gave her things of value in exchange: electronic payments, promised tuition, paid travel and lodging. Each act was a commercial sex act within the meaning of 18 U.S.C. § 1591(e)(3).

c. **Coercion and fraud**. Defendants selected Jane Doe 2 because she had no meaningful savings or stable income. GREENBERG learned that she was enrolled

in college courses she could not afford, and he used that need to bind her to the venture. Defendants promised to cover her tuition and other basic needs. They then paid in small, partial amounts and told her the balance was coming once GAETZ sent his share, so she always had to come back to them for the rest. They offered her specific sums for sex, then paid less than they promised. Each payment covered one bill, and when the next bill came, she had to go back to the men to cover it. Defendants supplied her with MDMA before having sex with her. They supplied stimulants so she could keep up with school while remaining available to them. They also conditioned her access to the outings and privileges they controlled on performing sexual acts for GAETZ. Through this pattern, Defendants caused Jane Doe 2 to believe she would lose her education and suffer serious financial harm if she stopped performing sexual acts. That belief was reasonable for a young woman in her circumstances, and Defendants intended it.

d. **Knowledge or reckless disregard**. GAETZ and GREENBERG knew, or recklessly disregarded, that their scheme would cause Jane Doe 2 to engage in commercial sex acts. They coordinated the payments meant to keep her dependent: GREENBERG told her the rest of her tuition depended on money from GAETZ. They also split the costs of "drugs, hotel [s], and girls." GREENBERG has admitted that he labeled payments for commercial sex acts "school" to disguise their purpose, the same label he used for his payments to Jane Doe 2. (Plea Agreement at 28–29.)

e. **Interstate commerce**. Defendants' conduct was in and affecting interstate commerce. They recruited Jane Doe 2 through the internet, paid her through

interstate electronic payment platforms, and arranged and funded her interstate and international travel.

f. **Injury**. As a direct and proximate result, Jane Doe 2 suffered damages, as alleged in paragraph 83.

109. DORWORTH knowingly participated in and benefited from the venture's trafficking of Jane Doe 1, in violation of 18 U.S.C. § 1595(a), as follows:

a. **Knowing participation**. DORWORTH made his gated residence available to the venture as a private, access-controlled place for its gatherings. Because every guest needed approval from the house to enter, he controlled who was admitted. He hosted the gathering at which GREENBERG brought Jane Doe 1 to meet GAETZ, and he was present throughout. While there, he promoted the drug use that accompanied the venture's sexual activity by showing guests how to use a marijuana vaporizer and using it himself.

b. **Agreement with GAETZ and GREENBERG**. DORWORTH maintained close personal and professional relationships with GAETZ and GREENBERG. He regularly hosted GAETZ at his home, three to five times a year. After the gathering, DORWORTH agreed to pay for further sexual contact with Jane Doe 1. A message Jane Doe 1 understood to be from DORWORTH stated: "Do it. I'll cover 100 percent". She was then told he would have $500 for her. That payment was never made.

c. **Knowledge or reckless disregard**. DORWORTH knew, or recklessly disregarded, that the venture used his residence for commercial sex. He walked in on GAETZ having sex with a seventeen-year-old at the gathering and joked about it with other

guests. GAETZ paid that minor $400 in cash that night. DORWORTH was also present while the young women swam naked in his pool. GREENBERG has admitted that he introduced Victim A to other adult men who engaged in commercial sex acts with her while she was a minor, one of these adult men included (but was not limited to, Defendant GAETZ) and that he and Victim A communicated on July 14 and 15, 2017 to schedule commercial sex acts. *See* Plea Agreement at 30–32 (plea agreement references "other men" but Plaintiff is aware that one of these men includes GAETZ).

d. **Benefit**. DORWORTH received sexual gratification and enhanced social and political standing from hosting the venture's gatherings.

e. **Injury**. As a direct and proximate result of DORWORTH's participation, Jane Doe 1 suffered damages, as alleged in paragraph 83.

110. As a result of the alleged exploitation, each Plaintiff suffered physical and psychological injuries and economic loss, as follows:

a. **Jane Doe 1**. Defendants' trafficking caused Jane Doe 1 severe emotional and psychological trauma. Throughout the venture, Defendants supplied her with drugs and kept her using drugs or alcohol while she was with them. They kept her financially dependent on payments that never covered her needs. As a result, she was left exhausted and unable to function normally. She has needed, and continues to receive, mental health treatment for that trauma.

b. **Jane Doe 2.** Defendants' trafficking caused Jane Doe 2 severe emotional and psychological trauma. Throughout the venture, Defendants supplied her with drugs and kept her using drugs or alcohol while she was with them. They kept her

financially dependent on payments that never covered her needs. As a result, she was left exhausted and unable to function normally. She has needed, and continues to receive, mental health treatment for that trauma. She has incurred treatment costs in amounts to be proven at trial.

c. **Continuing harm**. Each Plaintiff continues to suffer emotional distress, humiliation and loss of enjoyment of life as a result of Defendants' conduct.

## TIMELINESS

111. The federal claims arise from conduct during 2017 through January 2019. Counts I and II are brought within ten years after the respective causes of action arose, as required by 18 U.S.C. § 1595(c)(1). Plaintiffs do not rely merely on continuing effects of an otherwise untimely act.

## THE LAW

112. 18 U.S.C. §1595 (a) states that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

## FIRST CAUSE OF ACTION
**Sex Trafficking under 18 U.S.C. § 1595**
**Perpetrator Liability Against MATTHEW LOUIS GAETZ II**

113. Plaintiffs incorporate paragraphs 1 through 111, which state the common factual allegations, but incorporate no other count. Each Plaintiff asserts this claim for the trafficking and injury she personally suffered.

114. This count seeks the civil remedy provided by 18 U.S.C. § 1595(a) each Defendant's own violation of § 1591(a)(1). GAETZ knowingly recruited, enticed, obtained, maintained, patronized, or solicited each Plaintiff for the commercial sex acts specifically alleged above, knowing or recklessly disregarding that the pleaded means of force, fraud, or coercion would be used to cause those acts.

115. GAETZ obtained and patronized Plaintiffs through the coordinated arrangements with GREENBERG, made the identified payments, and arranged travel, including the January 2019 New York trip. His liability rests on his own participation and knowledge or reckless disregard of the particular prohibited means alleged above; it does not rest merely on his office, wealth, or status.

116. The sex acts were commercial because money, paid travel, lodging, or other identified consideration was given or received on account of them. Plaintiffs rely on those exchanges, including the identified electronic payments and funded travel, rather than sexual gratification alone to establish the commercial element.

117. The conduct occurred in or affected interstate or foreign commerce through use of the recruitment website and electronic payment services, interstate travel arrangements, and the Florida and New York encounters. This count rests on domestic recruitment, arrangements, and commercial sexual acts; the Bahamas travel is additional context for the alleged undertaking.

118. The specific force, fraudulent inducement, or coercive scheme pleaded for each Plaintiff caused that Plaintiff to perform the commercial sex acts at issue. The resulting physical, psychological, and economic injuries described above were proximately caused by GAETZ's respective violations.

WHEREFORE, Plaintiffs JANE DOE 1 and JANE DOE 2 demand judgment against MATTHEW LOUIS GAETZ II for compensatory damages, reasonable attorney's fees under 18 U.S.C. § 1595(a), costs, interest as allowed by law, and other appropriate relief, without duplicative recovery, and demand trial by jury on all issues so triable.

**SECOND CAUSE OF ACTION**
**Sex Trafficking under 18 U.S.C. § 1595**
**Perpetrator Liability Against JOEL MICAH GREENBERG**

119. Plaintiffs incorporate paragraphs 1 through 111, which state the common factual allegations, but incorporate no other count. Each Plaintiff asserts this claim for the trafficking and injury she personally suffered.

120. This count seeks the civil remedy provided by 18 U.S.C. § 1595(a) for Defendant's own violation of § 1591(a)(1). Greenberg knowingly recruited, enticed, obtained, maintained, patronized, or solicited each Plaintiff for the commercial sex acts specifically alleged above, knowing or recklessly disregarding that the pleaded means of force, fraud, or coercion would be used to cause those acts.

121. Greenberg recruited Jane Doe 1 through Victim A in summer 2017 and recruited Jane Doe 2 through SeekingArrangement.com beginning in October 2017. His conduct included arranging gatherings, supplying MDMA, arranging commercial sexual encounters, and making or promising the specified payments. His liability rests on his own conduct and state of mind concerning the acts identified separately for each Plaintiff above.

122. Greenberg's own sworn admissions in the Plea Agreement confirm the methods alleged here: recruiting women through the "sugar daddy" website, paying them for commercial sex acts with him and others, disguising those payments as "school" and living expenses, and paying women extra to take Ecstasy. (Plea Agreement at 28–30.)

123. The sex acts were commercial because money, paid travel, lodging, or other identified consideration was given or received on account of them. Plaintiffs rely on those exchanges, including the identified electronic payments and funded travel, rather than sexual gratification alone to establish the commercial element.

124. The conduct occurred in or affected interstate or foreign commerce through use of the recruitment website and electronic payment services, interstate travel arrangements, and the Florida and New York encounters. This count rests on domestic recruitment, arrangements, and commercial sexual acts; the Bahamas travel is additional context for the alleged undertaking.

125. The specific force, fraudulent inducement, or coercive scheme pleaded for each Plaintiff caused that Plaintiff to perform the commercial sex acts at issue. The resulting physical, psychological, and economic injuries described above were proximately caused by Greenberg's respective violations.

WHEREFORE, Plaintiffs JANE DOE 1 and JANE DOE 2 demand judgment against JOEL MICAH GREENBERG for compensatory damages, reasonable attorney's fees under 18 U.S.C. § 1595(a), costs, interest as allowed by law, and other appropriate relief, without duplicative recovery, and demand trial by jury on all issues so triable.

## <u>THIRD CAUSE OF ACTION</u>
## Sex Trafficking under 18 U.S.C. § 1595
## Perpetrator Liability Against CHRISTOPHER DORWORTH

126. Plaintiffs incorporate paragraphs 1 through 111, which state the common factual allegations, but incorporate no other count. Each Plaintiff asserts this claim for the trafficking and injury she personally suffered.

127. This count seeks the civil remedy provided by 18 U.S.C. § 1595(a) for Defendant's own violation of § 1591(a)(1). Dorworth knowingly harbored, maintained, patronized, and solicited

Jane Doe 1 and Jane Doe 2 for the commercial sex acts specifically alleged above, knowing or recklessly disregarding that the pleaded means of fraud or coercion would be used to cause those acts.

128. Dorworth made his gated Heathrow residence available to the venture as a private, access-controlled place for its gatherings, and because every guest required approval from the house to pass the staffed gate, he controlled who was admitted. On July 15, 2017, he hosted the gathering at which Greenberg brought Jane Doe 1 to meet GAETZ, was present throughout, and promoted the drug use that accompanied the venture's sexual activity. After the gathering, Dorworth agreed to pay for further sexual contact with Jane Doe 1, including through a message Jane Doe 1 understood to be from him stating, "Do it. I'll cover 100 percent," after which she was told he would have $500 for her. His liability rests on his own conduct and state of mind concerning Jane Doe 1.

129. The sex acts were commercial because money, paid travel, lodging, or other identified consideration was given or received on account of them. Plaintiffs rely on those exchanges, including the identified electronic payments and funded travel, rather than sexual gratification alone to establish the commercial element.

130. Dorworth knew, or recklessly disregarded, that the venture used his residence for commercial sex. He walked in on GAETZ having sex with a seventeen-year-old at the gathering and joked about it with other guests, GAETZ paid that minor $400 in cash that night, and Dorworth was present while the young women swam naked in his pool.

131. The conduct occurred in or affected interstate or foreign commerce through use of the recruitment website and electronic payment services, interstate travel arrangements, and the Florida and New York encounters. This count rests on domestic recruitment, arrangements, and

commercial sexual acts; the Bahamas travel is additional context for the alleged undertaking.

132. The specific force, fraudulent inducement, or coercive scheme pleaded for each Plaintiff caused that Plaintiff to perform the commercial sex acts at issue. The resulting physical, psychological, and economic injuries described above were proximately caused by Dorworth's respective violations.

WHEREFORE, Plaintiffs JANE DOE 1 and JANE DOE 2 demand judgment against CHRISOPHER DORWORTH for compensatory damages, reasonable attorney's fees under 18 U.S.C. § 1595(a), costs, interest as allowed by law, and other appropriate relief, without duplicative recovery, and demand trial by jury on all issues so triable.

**<u>FOURTH CAUSE OF ACTION</u>**
**Sex Trafficking under 18 U.S.C. § 1595**
**Perpetrator Liability Against GREENBERG DENAL ASSOCIATES LLC, GREENBERG DENTAL & ORTHODONTICS P.A., GREENBERG DENTAL SPECIALTY GROUP, LLC., and AWG, INC.**

133. Plaintiffs incorporate paragraphs 1 through 111, which state the common factual allegations, but incorporate no other count. Each Plaintiff asserts this claim for the trafficking and injury she personally suffered.

134. Greenberg Dental, acting through its officers and principals, knowingly provided and obtained the means by which each Plaintiff was recruited, enticed, and solicited for the commercial sex acts specifically alleged above. It did so knowing, or in reckless disregard of the fact, that force, fraud, or coercion, including the provision of controlled substances, would be used to cause those acts.

135. Greenberg Dental supplied Greenberg the money he used to recruit Jane Doe 1 through Victim A in summer 2017 and to recruit Jane Doe 2 through SeekingArrangement.com beginning in October 2017. It also supplied the money used to buy MDMA and other controlled substances

provided to Plaintiffs, to pay for the commercial sexual encounters, and to fund the travel and lodging alleged above. These funds reached Greenberg through AWG, Inc., which received its value and income from Greenberg Dental and paid Greenberg $400,000 per year. AWG, acting through its principal, Andrew W. Greenberg, made those disbursements in quarterly payments of $100,000, knowing the purposes for which Greenberg would use them. Greenberg Dental's and AWG's liability rests on each entity's own knowing provision of those funds for the purposes alleged.

136. The sex acts were commercial because money, paid travel, lodging, or other identified consideration was given or received on account of them. Greenberg Dental and AWG were the source of the money used for those exchanges.

137. The conduct occurred in or affected interstate or foreign commerce through use of the recruitment website and electronic payment services, interstate travel arrangements, and the Florida and New York encounters. This count rests on domestic recruitment, arrangements, and commercial sexual acts; the Bahamas travel is additional context for the alleged undertaking.

138. The force, fraudulent inducement, or coercive scheme pleaded for each Plaintiff, including controlled substances purchased with Greenberg Dental and AWG funds, caused that Plaintiff to perform the commercial sex acts at issue. The resulting physical, psychological, and economic injuries were proximately caused by Greenberg Dental's and AWG's violations.

WHEREFORE, Plaintiffs JANE DOE 1 and JANE DOE 2 demand judgment against GREENBERG DENAL ASSOCIATES LLC, GREENBERG DENTAL & ORTHODONTICS P.A., and GREENBERG DENTAL SPECIALTY GROUP, LLC. for compensatory damages, reasonable attorney's fees under 18 U.S.C. § 1595(a), costs, interest as allowed by law, and other appropriate relief, without duplicative recovery, and demand trial by jury on all issues so triable.

## FIFTH CAUSE OF ACTION
**Sex Trafficking under 18 U.S.C. § 1595**
**Beneficiary Liability Against MATTHEW LOUIS GAETZ II**

139. Plaintiffs incorporate paragraphs 1 through 111 but incorporate no other count. Each Plaintiff asserts this claim for her own trafficking and resulting injury, alternatively to perpetrator liability where applicable.

140. The undertaking joined GAETZ and Greenberg in coordinated recruitment, allocation of drug and lodging expenses, payments, and arrangements for commercial sexual activity. Dorworth's alleged participation consists of the knowing assistance and agreement specifically described above. The undertaking was a common enterprise involving shared risks and anticipated benefits, including coordinated access to commercial sexual activity and shared expenses; it was not simply a collection of unrelated transactions.

141. GAETZ knowingly benefited by receiving sexual access through the jointly arranged encounters and the benefit of shared recruitment, drugs, lodging and travel arrangements. He took part through payments, recruitment access, and coordination with Greenberg, rather than acting solely as an unrelated customer.

142. The undertaking engaged in the violations of 18 U.S.C. § 1591 alleged above, including the identified violations involving each Plaintiff. Each Defendant knew or should have known that the undertaking had engaged in an act violating § 1591, based on his own conduct, observations and communications described above. This claim does not depend upon a requirement that a beneficiary knew the identity of a particular trafficking victim.

143. Plaintiffs' entitlement to relief nevertheless rests on their own status as victims of violations of § 1591 and the causal connection between their injuries and each Defendant's participation. Victim A's age and Greenberg's conviction do not substitute for those elements.

Each Plaintiff suffered the separately described injuries as a direct and proximate result of the actionable participation alleged against each Defendant.

WHEREFORE, Plaintiffs JANE DOE 1 and JANE DOE 2 demand judgment against MATTHEW LOUIS GAETZ II for compensatory damages, reasonable attorney's fees under 18 U.S.C. § 1595(a), costs, interest as allowed by law, and other appropriate relief, without duplicative recovery, and demand trial by jury on all issues so triable.

**SIXTH CAUSE OF ACTION**
**Sex Trafficking under 18 U.S.C. § 1595**
**Beneficiary Liability Against JOEL MICAH GREENBERG**

144. Plaintiffs incorporate paragraphs 1 through 111 but incorporate no other count. Each Plaintiff asserts this claim for her own trafficking and resulting injury, alternatively to perpetrator liability where applicable.

145. The undertaking joined GAETZ and Greenberg in coordinated recruitment, allocation of drug and lodging expenses, payments, and arrangements for commercial sexual activity. Dorworth's alleged participation consists of the knowing assistance and agreement specifically described above. The undertaking was a common enterprise involving shared risks and anticipated benefits, including coordinated access to commercial sexual activity and shared expenses; it was not simply a collection of unrelated transactions.

146. Greenberg knowingly benefited by receiving sexual access and sharing expenses with GAETZ. He took part through recruiting Plaintiffs, organizing encounters, providing drugs and making or arranging payments.

147. The undertaking engaged in the violations of 18 U.S.C. § 1591 alleged above, including the identified violations involving each Plaintiff. Each Defendant knew or should have known that the undertaking had engaged in an act violating § 1591, based on his own conduct,

observations and communications described above. This claim does not depend upon a requirement that a beneficiary knew the identity of a particular trafficking victim.

148. Plaintiffs' entitlement to relief nevertheless rests on their own status as victims of violations of § 1591 and the causal connection between their injuries and each Defendant's participation. Victim A's age and Greenberg's conviction do not substitute for those elements. Each Plaintiff suffered the separately described injuries as a direct and proximate result of the actionable participation alleged against each Defendant.

WHEREFORE, Plaintiffs JANE DOE 1 and JANE DOE 2 demand judgment against JOEL MICAH GREENBERG for compensatory damages, reasonable attorney's fees under 18 U.S.C. § 1595(a), costs, interest as allowed by law, and other appropriate relief, without duplicative recovery, and demand trial by jury on all issues so triable.

## SEVENTH CAUSE OF ACTION
### Sex Trafficking under 18 U.S.C. § 1595
### Beneficiary Liability Against CHRISTOPHER DORWORTH

149. Plaintiffs incorporate paragraphs 1 through 111 but incorporate no other count. Each Plaintiff asserts this claim for her own trafficking and resulting injury, alternatively to perpetrator liability where applicable.

150. Dorworth's alleged participation consists of the knowing assistance and agreement specifically described above. The undertaking was a common enterprise involving shared risks and anticipated benefits, including coordinated access to commercial sexual activity and shared expenses; it was not simply a collection of unrelated transactions.

151. Dorworth knowingly benefited in the particular manner pleaded above and took part through the specific knowing assistance and agreement alleged concerning his residence and the undertaking. His liability to each Plaintiff rests on the separately pleaded connection between that

participation and her injury.

152. Dorworth received sexual gratification and enhanced social and political standing from hosting the venture's gatherings. He maintained close personal and professional relationships with GAETZ and Greenberg, hosted GAETZ at his home three to five times a year, and through that hosting obtained continued access to the venture's gatherings and the commercial sexual activity they made available, including his own agreement to pay for further sexual contact with Jane Doe 1.

153. The undertaking engaged in the violations of 18 U.S.C. § 1591 alleged above, including the identified violations involving each Plaintiff. Each Defendant knew or should have known that the undertaking had engaged in an act violating § 1591, based on his own conduct, observations and communications described above. This claim does not depend upon a requirement that a beneficiary knew the identity of a particular trafficking victim.

154. Plaintiffs' entitlement to relief nevertheless rests on their own status as victims of violations of § 1591 and the causal connection between their injuries and each Defendant's participation. Victim A's age and Greenberg's conviction do not substitute for those elements. Each Plaintiff suffered the separately described injuries as a direct and proximate result of the actionable participation alleged against each Defendant.

WHEREFORE, Plaintiffs JANE DOE 1 and JANE DOE 2 demand judgment against CHRISTOPHER DORWORTH for compensatory damages, reasonable attorney's fees under 18 U.S.C. § 1595(a), costs, interest as allowed by law, and other appropriate relief, without duplicative recovery, and demand trial by jury on all issues so triable.

**EIGTH CAUSE OF ACTION**
**Sex Trafficking under 18 U.S.C. § 1595**
**Beneficiary Liability Against GREENBERG DENAL ASSOCIATES LLC, GREENBERG DENTAL & ORTHODONTICS P.A., GREENBERG DENTAL SPECIALTY GROUP, LLC., and AWG, INC.**

155. Plaintiffs incorporate paragraphs 1 through 111 but incorporate no other count. Each Plaintiff asserts this claim for her own trafficking and resulting injury, alternatively to perpetrator liability where applicable.

156. Greenberg Dental participated in the undertaking by knowingly supplying the money that funded it, including the money used to recruit Plaintiffs, to purchase and transport controlled substances, to pay for commercial sexual encounters and travel, and to conceal the scheme. AWG participated by paying that money out to Greenberg, $100,000 a quarter, as the vehicle through which Greenberg's parents funded his lifestyle and the conduct alleged above.

157. Greenberg Dental knowingly benefited from that participation. Through AWG, Inc., which received its value and income from Greenberg Dental, it directed $400,000 per year to Greenberg and maintained his $5,500,000 stake in AWG, preserving the Greenberg family's ownership and control and keeping Greenberg, the venture's recruiter and paymaster, financed and operating. After Greenberg's arrest on June 23, 2020, Greenberg Dental continued that support by funding his bail. AWG knowingly benefited as well. It kept its place as the channel for the Greenberg family's wealth, preserved the family's ownership and control of AWG and the $5,500,000 stake Greenberg held in it, and, together with Greenberg Dental and Andrew W. Greenberg, funded Greenberg's bail after his arrest.

158. Greenberg Dental and AWG also benefited by buying political access and influence through Greenberg. The family enterprise that paid Greenberg also supplied $246,000 toward his election as Seminole County Tax Collector. Once in office, Greenberg used the money it paid him

to give a sitting congressman, a former state legislator, and other political power players drugs, travel, and sexual access to young women. That placed the Greenberg family and its businesses inside the circle of officials who held public power in Florida and in Congress. Greenberg Dental and AWG kept paying for that access, and kept Greenberg financed and in office, knowing what the money bought.

159. Their knowledge is further shown by the Greenberg family's repeated provision of large sums, including a $90,000 check marked "loan" in January 2018 and a $200,000 check in early 2019 drawn through an account Greenberg shared with a family member, to cover Greenberg's misappropriation of public funds during the same period as the venture, as alleged in paragraph 22A.

160. Greenberg Dental and AWG each knew or should have known that the undertaking had engaged in violations of 18 U.S.C. § 1591. Their knowledge rests on its own provision of funds for the purposes alleged above, the knowledge of Andrew W. Greenberg, who is President of Greenberg Dental Associates, LLC and Greenberg Dental & Orthodontics, P.A., and the fact that none of Greenberg's alleged conduct could have been committed without their financial support. This claim does not depend upon a requirement that a beneficiary knew the identity of a particular trafficking victim.

161. Plaintiffs' entitlement to relief nevertheless rests on their own status as victims of violations of § 1591 and the causal connection between their injuries and the participation of Greenberg Dental and AWG. Victim A's age and Greenberg's conviction do not substitute for those elements. Each Plaintiff suffered the separately described injuries as a direct and proximate result of the actionable participation alleged against Greenberg Dental and AWG.

WHEREFORE, Plaintiffs JANE DOE 1 and JANE DOE 2 demand judgment against

GREENBERG DENAL ASSOCIATES LLC, GREENBERG DENTAL & ORTHODONTICS P.A., GREENBERG DENTAL SPECIALTY GROUP, LLC, and AWG, INC for compensatory damages, reasonable attorney's fees under 18 U.S.C. § 1595(a), costs, interest as allowed by law, and other appropriate relief, without duplicative recovery, and demand trial by jury on all issues so triable.

**DEMAND FOR JURY TRIAL**

Plaintiffs respectfully demand a trial by jury on all issues so triable in this action.

DATED: OCTOBER 15, 2026.

GOLDLAW, P.A.
*Attorneys for Plaintiffs*
1641 Worthington Road, Suite 300
West Palm Beach, FL 33409
(561) 697-4440

By: */s/Spencer T. Kuvin, Esq.*
Spencer T. Kuvin, Esq.
FL Bar No.: 89737
Paul W. McBride, Esq.
FL Bar No. 1003056
Lukas Manolis, Esq.
FL Bar No. 1080065
Primary Email:
JaneDoe12222048@goldlaw.filevineapp.com
Secondary Email: skuvin@goldlaw.com
Paralegal's Email: snewall@goldlaw.com
Secretary's Email: aattick@goldlaw.com

Leppard Law
*Attorney for Plaintiffs*
638 Broadway Avenue
Orlando, FL 32803
(407) 476-4111

By: */s/Joel N. Leppard, Esq.*
Joel N. Leppard, Esq.
FL Bar 86081
Primary Email: joel@leppardlaw.com