**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JANE DOE 1 and JANE DOE 2,

*Plaintiffs*,

v.

Case No. 6:26-cv-02402-GAP-DCI

MATTHEW LOUIS GAETZ II, JOEL MICAH GREENBERG, CHRISTOPHER DORWORTH, GREENBERG DENTAL ASSOCIATES, LLC, GREENBERG DENTAL & ORTHODONTICS, P.A., GREENBERG DENTAL SPECIALTY GROUP, LLC, and AWG, INC.,

*Defendants*.
_______________________________/

**DEFENDANT MATTHEW GAETZ'S OPPOSITION**
**<u>TO PLAINTIFFS' MOTION TO PROCEED ANONYMOUSLY</u>**

# CONTENTS

PRELIMINARY STATEMENT ........ 1
RELEVANT FACTUAL BACKGROUND ........ 2
LEGAL STANDARD ........ 4
ARGUMENT ........ 5
I. The Primary SMU Factors Do Not Support Anonymity. ........ 5
A. Plaintiffs Have Not Shown That Proceeding Under Their Names Would Require Disclosure of Information of the "Utmost Intimacy." ........ 5
B. Plaintiffs Do Not Face a Realistic Risk of Criminal Prosecution. ........ 10
II. The Totality of the Circumstances Confirms That Plaintiffs Have Not Overcome the Presumption of Openness. ........ 11
A. Plaintiffs Were Not Minors During the Events Alleged. ........ 12
B. Plaintiffs Have Not Shown a Threat of Harm from Disclosure of Their Names. ........ 12
C. Plaintiffs' Remaining Authorities Are Not Germane to the Rule 10 Analysis. ........ 13
D. Fundamental Unfairness Weighs Against Anonymity. ........ 14
E. Plaintiffs' Privacy Interest Is Diminished. ........ 18
CONCLUSION ........ 19

## PRELIMINARY STATEMENT

Plaintiffs and their counsel have aggressively publicized this lawsuit, which they style specifically as a lawsuit against Mr. Gaetz. They included irrelevant and salacious allegations against Mr. Gaetz in their publicly filed, unredacted federal complaint. They parroted the same allegations in their publicly filed, unredacted Motion. And Plaintiffs' lead counsel has repeatedly used his X account to shine a spotlight on Plaintiffs' claims. Indeed, Mr. Kuvin has gone so far as to *heavily* imply—arguably, outright assert—on X that Mr. Gaetz is a pedophile.

All of this was done with the intent of trying Mr. Gaetz in the court of public opinion while taking shelter behind a veil of anonymity. Plaintiffs now move this Court to allow them to proceed anonymously throughout this entire litigation, which will allow them to continue attacking Mr. Gaetz without any consequence. The Court should deny Plaintiffs' Motion.

Plaintiffs fail to meet their burden under Federal Rule of Civil Procedure 10 of rebutting the constitutionally embedded presumption of openness in judicial proceedings. Plaintiffs are not challenging government action, have not shown that proceeding under their actual names would require the disclosure of information of the utmost intimacy, and have not shown that they may face a risk of criminal prosecution (they do not).

Plaintiffs' request is also not supported by the factors courts consider when analyzing an anonymity request under the totality of the circumstances. Plaintiffs were adults during the events alleged, have not identified *any* evidence showing that they

face a real threat of harm from disclosure of their names, and rely on a disjointed collection of authorities that do not support their request under Rule 10(a). Moreover, Plaintiffs ignore the significant prejudice that Mr. Gaetz already faces on account of their actions.

For these reasons, Plaintiffs' request to proceed anonymously should be denied.

## RELEVANT FACTUAL BACKGROUND

On October 15, 2026, Plaintiffs filed this action against Mr. Gaetz, Joel Micah Greenberg, Christopher Dorworth, and four business entities. ECF No. 1 (the "Complaint"). They assert civil claims under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595 ("TVPRA"), based on allegations that between July 2017 and January 2019, they attended social gatherings with Defendants, received payments and travel, and engaged in sexual activity with Defendants. According to the Complaint, Jane Doe 1 was twenty and Jane Doe 2 was twenty-two when this alleged conduct began. Compl. ¶¶ 53, 77. Mr. Gaetz vehemently contests Plaintiffs' allegations of misconduct.

On the same day Plaintiffs filed the Complaint, they filed a joint motion to proceed anonymously. ECF No. 2 (the "Motion"). They ask the Court to permit them to litigate the entire action under pseudonyms or, in the alternative, for an evidentiary hearing. Mot. at 7–8.[1] No declarations or other evidence are attached to the Motion.

[1] In their argument, Plaintiffs also "request that any filing disclosing the specifics of their medical and mental health care, including the identity of their providers and any medications prescribed to them, be filed only in redacted form." Mot. at 7. Federal Rule of Civil Procedure 5.2(e) permits such relief only "[f]or good cause." Plaintiffs identify no filing, submit no declaration or other evidence, and offer

Immediately after filing the Complaint, Plaintiffs' lead counsel, Spencer T. Kuvin, announced it on X: "Today, we filed suit against former Congressman Matt Gaetz and others to hold them accountable for alleged sex trafficking." Ex. A at 1. Over the following day, counsel posted numerous public replies about the case. These included at least eighteen replies posted during the afternoon of October 16, 2026, Ex. A at 2–20, and a post wherein Mr. Kuvin strongly implied that Mr. Gaetz was a pedophile. *Id.* at 9.

On November 5, 2026, after the Court directed Plaintiffs to comply with its Initial Case Order, ECF Nos. 13, 31, Plaintiffs certified that this action is related to two cases. ECF No. 32. The first is *Dorworth v. Greenberg*, No. 6:23-cv-871-CEM-DCI (M.D. Fla.) (the "Dorworth Action"). The second is *United States v. Greenberg*, No. 6:20-cr-97 (M.D. Fla.). *Id.* The Dorworth Action was a civil RICO action brought by Defendant Dorworth against Greenberg and others, and arising from the same misconduct alleged in this lawsuit. On June 5, 2024, Joel N. Leppard filed a "Notice of Compliance with Subpoena" in the Dorworth Action, on behalf of Jane Doe 2. This docket entry identified her by her true name.[2] Magistrate Judge Irick struck the notice under Federal Rule of Civil Procedure 5(d)(1) and directed the Clerk to delete the document. Both docket entries identified Jane Doe 2 by name and remained publicly

no basis for a blanket advance order. Nor does Rule 5.2(e) displace Rule 10(a)'s requirement that parties be named. If Plaintiffs seek redaction of a particular filing, they may move for it as to that filing.

[2] Mr. Gaetz does not agree that this information is private, as it is readily available on a public docket. However, out of an abundance of caution and given the nature of this Opposition, Mr. Gaetz has not identified the specific docket entry in the Dorworth Action. Mr. Gaetz can provide the docket entry under seal if this Court requires.

accessible as of the date this action was filed.

## LEGAL STANDARD

"Generally, parties to a lawsuit must identify themselves in the pleadings." *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020) (quoting *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992)); *see* Fed. R. Civ. P. 10(a). The rule does not merely further administrative convenience—"[i]t protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Chiquita*, 965 F.3d at 1247 (quoting *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011)); *see also Doe v. Intel Corp.*, 786 F. Supp. 3d 576, 581 (S.D.N.Y. 2024) ("At the outset, the Court notes that Plaintiff has 'invoked the public forum of litigation in which there is a strong presumption of public access.'") (quoting *Doe 1 v. United States*, 732 F. Supp. 3d 291, 300 (S.D.N.Y. 2024)).

The "ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Frank*, 951 F.2d at 323 (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)). "It is the exceptional case in which a plaintiff may proceed under a fictitious name." *Id.* This "creates a strong presumption in favor of parties' proceeding in their own names," *Plaintiff B*, 631 F.3d at 1315, which Plaintiffs must establish is outweighed by their privacy rights. *Chiquita*, 965 F.3d at 1247.

"The first step in analyzing a plaintiff's claim of a substantial privacy right" is to weigh the three factors analyzed in *Southern Methodist University Ass'n of Women Law*

*Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979) [hereinafter *SMU*]. *Plaintiff B*, 631 F.3d at 1316. Those factors are whether the party seeking anonymity "(1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; or (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *Chiquita*, 965 F.3d at 1247; *see SMU*, 599 F.2d at 712–13. Courts also consider whether the party is a minor, "faces a real threat of physical harm absent anonymity," and "whether the party's requested anonymity poses a unique threat of fundamental unfairness to the defendant." *Chiquita*, 965 F.3d at 1247. Ultimately, courts "carefully review all the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Id.* (quoting *Plaintiff B*, 631 F.3d at 1316). "Lawsuits are public events," and "[t]he risk that a plaintiff may suffer some embarrassment is not enough." *Frank*, 951 F.2d at 324; *see also Doe v. Sheely*, 781 F. App'x 972, 974 (11th Cir. 2019).

## ARGUMENT

As shown below, the relevant considerations—individually and collectively—weigh decisively against allowing the Plaintiffs to proceed anonymously. [3]

### I. The Primary SMU Factors Do Not Support Anonymity.

#### *A. Plaintiffs Have Not Shown That Proceeding Under Their Names Would Require*

[3] Plaintiffs do not rely on the first *SMU* factor ("challenging government activity"), *Chiquita*, 965 F.3d at 1247, for support. Nor could they, as they do not challenge any law, regulation, or governmental action. This analysis is not changed because some Defendants held public office at the time of the alleged events. *See Doe v. Hardwick*, No. 3:24-cv-489-BJD-MCR, 2024 WL 4264414, at *2 n.1 (M.D. Fla. Sept. 23, 2024) (defendant's governmental status was "irrelevant" because the action did not contemplate the "constitutional, statutory or regulatory validity of government activity").

*Disclosure of Information of the "Utmost Intimacy."*

"A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Frank*, 951 F.2d at 324. The "utmost intimacy" category has been applied to matters such as abortion, birth control, mental illness, homosexuality, transsexuality, the welfare rights of illegitimate children or abandoned families, and prayer and personal religious beliefs. *See id.*; *Plaintiff B*, 631 F.3d at 1316; *SMU*, 599 F.2d at 712–13. However, "[t]he risk that a plaintiff may suffer some embarrassment is not enough." *Frank*, 951 F.2d at 324. Nor are unsupported claims of social stigma. *See Hardwick*, 2024 WL 4264414, at *3 (plaintiff's "general[] references" to "'deeply personal' circumstances" and "allegations of a sexual nature" were not sufficient given facts presented).

Similarly, allegations of sexual misconduct do not, by themselves, satisfy this factor. As the Eleventh Circuit has recognized, "courts have often denied the protection of anonymity in cases where plaintiffs allege sexual assault, even when revealing the plaintiff's identity may cause her to 'suffer some personal embarrassment.'" *Plaintiff B*, 631 F.3d at 1316 (quoting *Frank*, 951 F.2d at 324) (first citing *Doe v. Del Rio*, 241 F.R.D. 154, 159–62 (S.D.N.Y. 2006) (holding that plaintiffs alleging sexual abuse by police officer could not proceed anonymously); and then citing *Doe v. Shakur*, 164 F.R.D. 359, 360–62 (S.D.N.Y. 1996) (denying motion by plaintiff suing hip-hop artist for sexual assault requesting to remain anonymous)). In

*Del Rio*, which the Eleventh Circuit cited with approval, the court did "not minimize the wrongfulness of the acts alleged or the suffering of anyone subjected to them," but concluded that "the actions alleged here are no more intimate than those alleged in hundreds of sexual harassment cases that are prosecuted openly in the victims' names every day in our courts." 241 F.R.D. at 160.

*Plaintiff B* illustrates the narrow circumstances in which sexual subject matter reaches the level of utmost intimacy. There, the plaintiffs alleged that they were filmed in "various stages of nudity and engaged in explicit sexual conduct *while they were minors*," and the footage was marketed commercially as pornography. 631 F.3d at 1317 (emphasis added). The court concluded that requiring one plaintiff to be identified by name "closely connects her graphic homosexual conduct with her widespread public reputation and thus constitutes a matter of 'the utmost intimacy.'" *Id.* Critically, the plaintiffs "had put on a convincing case," supported by expert testimony, that if identified they would "permanently be linked with the videos containing the footage of them," because the videos remained commercially available and searchable online. *Id.* at 1317–18.

By contrast, in *Hardwick*, the plaintiff asserted civil-rights, conspiracy, and defamation claims arising from circumstances she described as "deeply personal" and involving "allegations of a sexual nature," and she invoked Florida's interest in protecting victims of sex crimes. 2024 WL 4264414, at *2–3. The court "[did] not discredit those concerns" but nevertheless held that "the law does not land in Plaintiff's favor given the facts presented in this case." *Id.* at *3. It distinguished cases in which

anonymity rested on a plaintiff-specific showing—a declaration describing particular religious and cultural consequences, or the stigma of being publicly associated with "sexual conduct with a minor"—and found that the plaintiff had not explained "why this case presents more than personal embarrassment." *Id.*; *see also Doe v. Gutteridge Jeancharles, M.D., P.A.*, No. 6:24-cv-34-WWB-RMN, 2024 WL 701277, at *3 (M.D. Fla. Feb. 20, 2024) (finding alleged labor-trafficking victim's fears of embarrassment, humiliation, and retaliation insufficient).

The same result follows here. Plaintiffs rely on *Plaintiff B* because it "involved explicit sexual conduct," and they contend that they, too, must describe "the sexual acts the venture procured from each of them, the drugs supplied to them, and their financial dependence on the men who paid them." Mot. at 5–6. Mr. Gaetz does not minimize the sensitivity of those subjects (although he does vigorously contest Plaintiffs' allegations), but the question is whether Plaintiffs have made the showing this factor requires. They have not.

Plaintiffs were adults during the relevant period, Mot. at 2–3. They do not allege that footage or pictures of them exist, much less that it has been commercially marketed or remains publicly available. And, critically, they submit no declaration, expert testimony, or other evidence of the kind discussed in cases like *Plaintiff B* and *Hardwick*. Instead, Plaintiffs rely on assertions regarding the general sensitivity of sexual-misconduct allegations, which ordinarily does not warrant anonymity, *Plaintiff B*, 631 F.3d at 1316; *Hardwick*, 2024 WL 4264414, at *3, and the risk of embarrassment, which "is not enough," *Frank*, 951 F.2d at 324. The allegations

concerning drug use do not change that analysis. *See id.* at 324 & n.6. And the allegations regarding financial circumstances are (1) presented with no factual support and (2) not the kind typically seen in the "utmost intimacy" category—e.g., abortion, homosexuality, or prayer and personal religious beliefs. *See id*. at 324.

Further, this is not a case in which "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Frank*, 951 F.2d at 324. In *Predator Catchers*, for example, the plaintiff alleged that the defendants had falsely portrayed him as a sexual predator of children, and the court found that this harm "would be amplified" if he were required to proceed under his name. *Doe v. Predator Catchers, Inc.*, 343 F.R.D. 633, 637 (M.D. Fla. 2023). Here, Plaintiffs' alleged injuries arise from events that occurred years ago, and therefore, as in *Frank*, the injury litigated against "has already occurred." 951 F.2d at 324 n.6.

Plaintiffs' reliance on Florida law is similarly unavailing. Plaintiffs seek to distinguish *Frank* on the ground that their status as alleged trafficking victims is one "whose protection from public disclosure Florida law already recognizes," and they identify section 119.071(2)(h)1.b., Florida Statutes, as "the most compelling legal authority" for anonymity. Mot. at 4, 6. That provision, however, is an exemption to Florida's public records act. It makes confidential certain "criminal intelligence information or criminal investigative information," Fla. Stat. § 119.071(2)(h)1., and, as Plaintiffs acknowledge, it restricts disclosures by "state agencies," Mot. at 4. Section 119.071(2)(h)1. *does not* purport to govern pleadings in civil actions, let alone in federal court, where Rule 10(a) and Eleventh Circuit precedent control. The Eleventh Circuit

has made clear that Florida statutory definitions do not resolve the utmost-intimacy inquiry: "[n]othing about the specific definition of 'sexual conduct' under Florida state law makes this definition determinative of whether conduct can touch on matters of 'the utmost intimacy.'" *Plaintiff B*, 631 F.3d at 1317. And the plaintiff in *Hardwick* invoked the same Florida policy interest, yet was required to proceed in her own name. 2024 WL 4264414, at *2–4. The same result should follow here.

Because Plaintiffs have not shown that proceeding under their own names would require disclosure of information of the utmost intimacy, this factor does not support anonymity.

*B. Plaintiffs Do Not Face a Realistic Risk of Criminal Prosecution.*

The third *SMU* factor asks whether a plaintiff "would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *Chiquita*, 965 F.3d at 1247. This factor protects plaintiffs whose participation in litigation would expose them to a genuine prospect of prosecution. *See SMU*, 599 F.2d at 713. Plaintiffs contend that this factor favors anonymity because each Plaintiff will "describe her own participation in commercial sex acts and illegal drug use." Mot. at 6. Plaintiffs' argument fails because neither Plaintiff faces a realistic prospect of prosecution, and they offer nothing to suggest otherwise.

*First*, any prosecution would be time-barred. Plaintiffs allege that the relevant conduct occurred between 2017 and January 2019, and that the January 2019 New York trip "was the last contact either woman had with the venture." Compl. ¶¶ 98–100, 111. Any Florida limitations period therefore expired no later than January

2026—nine months before this action was filed. *See* Fla. Stat. §§ 775.15(2)(a)–(d) (a prosecution must be commenced within four years for a first-degree felony, three years for any other non-capital felony, and two years or one year for misdemeanors); 775.15(5) (Florida's tolling provision extends a limitations period by no more than three years). The general five-year federal limitations period expired no later than January 2024. 18 U.S.C. § 3282(a). Plaintiffs identify no offense to which a longer period would apply.

*Second*, Plaintiffs' own account confirms that no prosecution is realistic. Plaintiffs represent that each of them "was a victim or witness in federal criminal investigations, before a federal grand jury, and in the investigation conducted by the United States House Committee on Ethics." Mot. ¶ 6. Plaintiffs have thus already given their accounts in federal criminal proceedings, and they identify no prosecution—or threat of prosecution—that followed. Nor do Plaintiffs suggest that they intend to engage in future unlawful conduct. The concern this factor addresses—a plaintiff compelled "to admit an intent to engage in illegal conduct and thus risk criminal prosecution"—is not present here. *Chiquita*, 965 F.3d at 1247.

Because Plaintiffs face no realistic risk of prosecution, this *SMU* factor does not support anonymity.

## II. The Totality of the Circumstances Confirms That Plaintiffs Have Not Overcome the Presumption of Openness.

Along with the primary *SMU* factors discussed above, courts "should carefully review all the circumstances of a given case and then decide whether the customary

practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Id.* (quoting *Plaintiff B*, 631 F.3d at 1316); *see also Hardwick*, 2024 WL 4264414, at *1. Plaintiffs' Motion fails under this analysis as well.

*A. Plaintiffs Were Not Minors During the Events Alleged.*

Courts also consider whether the party seeking anonymity is a minor. *Chiquita*, 965 F.3d at 1247. Plaintiffs do not invoke this factor, nor can they. Jane Doe 1 was twenty years old when the alleged conduct began; Jane Doe 2 was twenty-two. Compl. ¶¶ 53, 77; Mot. at 2. This is particularly salient in this lawsuit because federal decisions permitting anonymity in sex-related cases—including *Plaintiff B*, on which Plaintiffs principally rely—have turned in substantial part on the plaintiffs' status as minors at the time of the events. *See Plaintiff B*, 631 F.3d at 1317; *Fla. Abolitionist, Inc. v. Backpage.com LLC*, 2018 WL 2017535, at *2 (M.D. Fla. May 1, 2018) (plaintiff's alleged victimization "occurred while she was a minor"); *see also Stegall*, 653 F.2d at 186 (noting in analogous context, "[a] final factor we find especially persuasive is the fact that plaintiffs are children."). Plaintiffs were adult women at the time the alleged conduct began and, therefore, this factor does not support anonymity.

*B. Plaintiffs Have Not Shown a Threat of Harm from Disclosure of Their Names.*

Another factor courts may consider is whether a plaintiff "faces a real threat of physical harm absent anonymity." *Chiquita*, 965 F.3d at 1247. That showing requires specific evidence. *See Predator Catchers*, 343 F.R.D. at 637. "[G]eneral evidence" of a risk does not "compel the conclusion" that a particular plaintiff faces that risk. *Chiquita*, 965 F.3d at 1248; *see also Stegall*, 653 F.2d at 186 (relying on "[e]vidence on

the record" that plaintiffs "may expect extensive harassment and perhaps even violent reprisals"); *Hardwick*, 2024 WL 4264414, at *4.

Plaintiffs identify no threat of physical violence, instead raising concerns about (1) psychological harm; (2) harassment and retaliation; and (3) Jane Doe 1's participation in an address-confidentiality program. Mot. ¶¶ 5–7; *id.* at 5, 7. But Plaintiffs do not support any of these concerns with evidence. The Motion attaches no declaration, no statement from a treating provider, and no other record material. *Cf. Predator Catchers*, 343 F.R.D. at 637 ("plaintiff has submitted particularized evidence"); *Doe v. Neverson,* 820 F. App'x 984, 988 (11th Cir. 2020) (plaintiff "supported her claim with a declaration"). Instead, Plaintiffs rely on precisely the speculative and generalized claims of harm—such as harassment from sustained media attention—that the Eleventh Circuit has held insufficient. *See, e.g.*, *Chiquita*, 965 F.3d at 1248 n.7 (rejecting claim of "heightened publicity"). Because Plaintiffs have not met their burden of supporting their claims, *id.* at 1247, this factor weighs against anonymity.

*C. Plaintiffs' Remaining Authorities Are Not Germane to the Rule 10 Analysis.*

Plaintiffs' remaining case law, presented in support of a general right to privacy, is also unavailing. *Cox Broadcasting* did not recognize a right to litigate anonymously; it held that the First Amendment barred a state from imposing liability for publishing a rape victim's name obtained from public court records, observing that "the interests in privacy fade when the information involved already appears on the public record." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494–95 (1975). *Coker* addressed whether the Eighth Amendment permits a death sentence for rape. *Coker v. Georgia*, 433 U.S. 584,

597–98 (1977) (plurality opinion). And *Douglas* and *Aaron* upheld partial closures of criminal courtrooms during a witness's testimony, where the witness testified under her own name and the trial transcript remained public. *See Douglas v. Wainwright*, 714 F.2d 1532, 1538–45 (11th Cir. 1983), *vacated*, 468 U.S. 1206 (1984), *reinstated*, 739 F.2d 531 (11th Cir. 1984); *Aaron v. Capps*, 507 F.2d 685, 687–88 (5th Cir. 1975). None supports pseudonymity for a civil plaintiff.

Finally, the Health Insurance Portability and Accountability Act ("HIPAA") is simply not relevant to the Rule 10 analysis. HIPAA governs covered entities, not litigants' filings, 45 C.F.R. § 160.102, and permits disclosure in judicial proceedings, *id.* § 164.512(e). "The mere fact that HIPAA or Florida protection laws might be implicated does not convince the Court that anonymity is appropriate." *L.R. v. Cigna Health & Life Ins. Co.*, No. 6:22-cv-1819-RBD-DCI, 2023 WL 4532672, at *3 (M.D. Fla. July 11, 2023).

*D. Fundamental Unfairness Weighs Against Anonymity.*

Rule 10(a) creates "a strong presumption in favor of parties' proceeding in their own names," and "[d]efendants have the right to know who their accusers are, as they may be subject to embarrassment or fundamental unfairness if they do not." *Plaintiff B*, 631 F.3d at 1315. A pseudonymous plaintiff denies the defendant "the shelter of anonymity—yet it is [the defendant], and not the plaintiff, who faces disgrace if the complaint's allegations can be substantiated," and if they are false, "anonymity provides a shield behind which defamatory charges may be launched without shame or liability." *Id.* (quoting *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005)). Courts must

therefore consider "whether the party's requested anonymity poses a unique threat of fundamental unfairness to the defendant." *Chiquita*, 965 F.3d at 1247. The relevant prejudice includes discovery difficulties, reputational damage, and the "fundamental fairness of proceeding anonymously," *Rapp v. Fowler*, 537 F. Supp. 3d 521, 531 (S.D.N.Y. 2021), and the plaintiff's interest is "weaker where anonymity has already been compromised," *Del Rio*, 241 F.R.D. at 158.

In one conclusory paragraph, Plaintiffs contend that Mr. Gaetz and the other Defendants will not be prejudiced because they already know Plaintiffs' identities, that Plaintiffs will disclose their names to defense counsel "under an appropriate confidentiality designation," and that the relief "restricts only the public disclosure" of their names. Mot. at 7. Plaintiffs offer no authority or evidence for any of these propositions. As an initial matter, the prejudice to Mr. Gaetz is not obviated simply because he knows Plaintiffs' identities (or may have them made known to him). *See, e.g., Intel Corp.*, 786 F. Supp. 3d at 584–85 (a defendant's knowledge of the plaintiff's identity "is not enough to negate prejudice"); *Rapp*, 537 F. Supp. 3d at 531. And even if this were enough, several courts in the Eleventh Circuit have nonetheless denied motions to proceed anonymously where the "fundamental unfairness" factor was the only factor supporting anonymity. *See, e.g., Hardwick*, 2024 WL 4264414, at *4; *Chiquita*, 965 F.3d at 1249 n.8 ("Given the wealth of evidence undercutting the pseudonymous appellants' risk of harm, the little evidence establishing it, and the presumption of judicial openness, the court acted within its discretion when it denied anonymity, even without a showing of prejudice.").

Moreover, the full scope of Plaintiffs' actions illustrates that proceeding anonymously would violate "[b]asic fairness," *SMU*, 599 F.2d at 713. Even at this early stage of the litigation, it is readily apparent that Mr. Gaetz is facing significant harm. Plaintiffs' counsel have done everything in their power to use Mr. Gaetz's name to maximize the publicity of this lawsuit and to amplify Plaintiffs' allegations. The Complaint is full of salacious, and often irrelevant, allegations aimed at vilifying Mr. Gaetz. *See, e.g.*, Compl. ¶¶ 1, 63. The Motion repeats these allegations, consistently associating Mr. Gaetz (and only Mr. Gaetz) with the separate misconduct of Defendant Greenberg, who pled guilty to TVPRA violations. And these allegations have already been circulated and repeated by prominent news sources.[4]

Perhaps most telling is that the very day this action was filed, Plaintiffs' counsel announced on X that "we filed suit against former Congressman Matt Gaetz . . . . No one is above the law!" Ex. A at 1. In another post, Plaintiffs' counsel stated "[j]ust filed this today. Continuing to fight for justice for victims of sex trafficking operations around the world." *Id.* This pattern of posts continued into the next day, as Plaintiffs' counsel posted at least eighteen public replies in about half an hour, *id.* at 2–20. These included posts in which he:

- vouched for the merits of this lawsuit, stating he "only take[s] on causes where there is substantial evidence," *id.* at 14, 16–17;
- identified the accusers—"Who's behind it are my clients who were

[4] *See, e.g.*, *Matt Gaetz Accused of Sex Trafficking Young Women, Lawsuit Says*, THE WASHINGTON POST (Oct. 15, 2026), https://www.washingtonpost.com/politics/2026/10/15/matt-gaetz-accused-sex-trafficking-young-women-lawsuit-says/; Richard Luscombe & Anna Betts, *Matt Gaetz Accused in Suit of Sex Trafficking Two Women in Florida*, THE GUARDIAN (Oct. 15, 2026, at 1:08 EDT), https://www.theguardian.com/us-news/2026/oct/15/matt-gaetz-florida-sex-traffing-lawsuit.

trafficked"—and directed readers to the Complaint and the House Ethics report, *id.* at 4, 18, 21; and

- mocked Mr. Gaetz's rights: "Let's see if he talks or if he chickens out and pleads the Fifth!" and "Shhh. Don't remind him," *id.* at 2, 19.

During this same time, Plaintiffs' counsel also ***heavily*** implied—arguably, he outright asserted—that Mr. Gaetz was a pedophile. *Id.* at 9.




In sum, Plaintiffs have viciously attacked Mr. Gaetz with unfounded claims in publicly filed court documents, news articles, and in Mr. Kuvin's X activity. And they have given every indication that they (and their counsel) will continue to target Mr. Gaetz specifically as this litigation progresses. It is not difficult to imagine how these unfounded allegations regarding sexual misconduct and drug use will cause Mr. Gaetz, a private citizen and member of the Florida Bar, harm. *See, e.g.,* Mark Levin (@marklevinshow), X (Nov. 12, 2026, 10:29 AM) (referring to Mr. Gaetz: "Somebody get Pedo the psychiatric help he desperately needs . . . When is your court date for those sexual molestation cases again?"), https://x.com/marklevinshow/status/2120

901765226758399.[5]

If Plaintiffs are permitted to proceed anonymously, Mr. Gaetz's ability to respond to these attacks, and the resulting harm, will be functionally eliminated.[6] In other words, anonymity will provide Plaintiffs with "a shield behind which defamatory charges may be launched without shame or liability." *Plaintiff B*, 631 F.3d at 1315 (quoting *Smith*, 429 F.3d at 710). "Basic fairness dictates" against forcing Mr. Gaetz to bear these harms while allowing this public shaming campaign to continue unchecked. *SMU*, 599 F.2d at 713.

*E. Plaintiffs' Privacy Interest Is Diminished.*

In addition to unfairly prejudicing Mr. Gaetz, Plaintiffs' public attacks diminish the very privacy interest that Plaintiffs ask this Court to weigh against the presumption of openness in federal court. *See Del Rio*, 241 F.R.D. at 158 (plaintiff's interest is "weaker where anonymity has already been compromised."). And these public attacks are not the only instances in which they have acted in a manner that diminishes this

[5] Mr. Levin has over 5 million followers on X and this tweet had more than 87,000 views as of the date of this filing.

[6] This matter is distinguishable from cases in which courts have found against unfair prejudice. In *C.S. v. Naples Hotel Company,* for example, the magistrate judge found that it would not be unfair to permit a sex trafficking plaintiff to proceed anonymously against a hotel and related corporate entity. No. 2:20-CV-631-JES-MRM, 2021 WL 7448019, at *6 (M.D. Fla. June 11, 2021), *report and recommendation adopted in part, rejected in part sub nom. S.Y. v. Choice Hotels Int'l, Inc.*, No. 220CV602FTM29MRM, 2021 WL 4167677 (M.D. Fla. Sept. 14, 2021). As an initial matter, the magistrate found that each anonymity factor considered supported plaintiff's request. *Id.* at *4-5. As discussed in this Opposition, that is not the case in this lawsuit. Moreover, the magistrate explained allowing anonymity would not be unfair because "Defendants had the opportunity to respond to Plaintiff's public allegations, Plaintiff's counsel's public statements never revealed Plaintiff's entire True Identity, and any residual prejudice against Defendants as a result of Plaintiff's media activity is likely minimal." *Id.* at *6. Again, this is not the case here. Mr. Gaetz has not had a meaningful opportunity to respond to Plaintiffs' public attacks and the significant harm he faces is neither "residual" nor "minimal." *Id.*

interest. For example, contrary to Plaintiffs' representation that neither has voluntarily placed her name in a public court file, Mot. at 4, Jane Doe 2's name is readily accessible in the related Dorworth Action. In June 2024, Mr. Leppard filed a "Notice of Compliance with Subpoena" by Jane Doe 2, in her true name, on the *Dorworth* docket. Nothing required Jane Doe 2's counsel to file a notice of compliance or to use her true name in the Dorworth Action—i.e., this filing was voluntary. This docket entry plainly identified Jane Doe 2 and it remains public.

Similarly, both Plaintiffs participated in the Dorworth Action by giving depositions using their true names. Yet, neither Plaintiff moved to proceed anonymously in that matter.[7] In a case arising from the very same misconduct alleged here, with numerous Defendants named here (but not Mr. Gaetz), it is striking that Plaintiffs apparently did not feel that their privacy interests needed the very court-ordered protection they now seek.

## CONCLUSION

For the above reasons, Mr. Gaetz requests that this Court enter an order denying Plaintiffs' Motion to Proceed Anonymously.[8]

---

[7] Given that discovery has not yet occurred, Mr. Gaetz is not privy to the full range of confidentiality protections in the Dorworth Action. However, a review of the docket shows that neither Plaintiff moved to participate anonymously in that related litigation.

[8] Mr. Gaetz also opposes Plaintiffs' alternative request for an evidentiary hearing *prior* to denying the Motion. Mot. at 8. Plaintiffs bear the burden of rebutting the presumption of openness, *Chiquita*, 965 F.3d at 1247, and were required to support their Motion with evidence when they filed it. They did not. Plaintiffs should not be permitted to use a hearing after the fact to supply the evidence they omitted.

Dated: November 25, 2026

Respectfully submitted,

**By:** ***/s/ Jeffrey A. Neiman***

**NEIMAN MAYS FLOCH & ALMEIDA, PLLC**

Jeffrey A. Neiman, Esq.
Florida Bar No. 544469
jneiman@nmfalawfirm.com
Bryan A. Almeida, Esq.
Florida Bar No. 1005558
balmeida@nmfalawfirm.com
Christopher D. Joyce, Esq.
Florida Bar No. 1020006
cjoyce@nmfalawfirm.com

550 S. Andrews Avenue, Suite 720,
Ft. Lauderdale, FL 33301
Telephone: (954) 462-1200

*Counsel for Mr. Gaetz*

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 25, 2026, I filed this document through CM/ECF, which will cause a copy of this document to be served by Notice of Electronic Filing to all parties and counsel of record.

**By:** ***/s/ Jeffrey A. Neiman***
Jeffrey A. Neiman, Esq.